PEOPLE v KINCADE

1. Criminal Law—Appeal and Error—Directed Verdict.

   A court, in reviewing facts to determine whether a directed verdict for the defendant was improperly denied, must, taking the evidence in a light most favorable to the prosecution, decide whether there are sufficient facts to support the directed verdict.

2. Criminal Law—Weapons—Carrying Concealed Weapons—Concealment.

   A weapon is concealed when it is not discernible by the ordinary observation of persons coming in contact with the person carrying it; absolute invisibility of a weapon is not indispensable to show concealment; the weapon need not be totally concealed.

3. Criminal Law—Weapons—Carrying Concealed Weapons—Concealment—Statutes.

   The fact that part of a revolver is covered by the hand of the person holding it does not, by itself, constitute concealment; statutes must be construed according to their ordinary and natural meaning, and the word 'concealed' ordinarily connotes some kind of withdrawal from observation so as to hide or secrete an object.

4. Criminal Law—Weapons—Carrying Concealed Weapons—Concealment—Jury—Jury Question—Element of Offense.

   Whether a concealment of a weapon has been established by the evidence presented is ordinarily a question for the jury, but the question of whether there is sufficient evidence on an element

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 886.

[2–5] 79 Am Jur 2d, Weapons and Firearms § 10.

Offense of carrying concealed weapon as affected by manner of carrying or place of concealment. 43 ALR2d 492.

[6, 7] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 29.

[8] 30 Am Jur 2d, Evidence § 1022.

75 Am Jur 2d, Trial §§ 166, 176, 708.

of the offense to support a conviction is within the province of the courts.

5. CRIMINAL LAW—WEAPONS—CARRYING CONCEALED WEAPONS—CONCEALMENT—ELEMENTS OF OFFENSE.

A conviction for carrying a concealed weapon arising out of a confrontation between police officers and a defendant who was carrying a revolver must be reversed for insufficient evidence on the element of concealment where the officers' inability to identify the object a defendant held in his hand was due to the limited visibility at the scene of the incident and the fact that the confrontation occurred suddenly and lasted but a few seconds.

6. DRUGS AND NARCOTICS—CRIMINAL LAW—POSSESSION—USABLE AMOUNT.

Illegal possession of narcotics is established if, under the facts and circumstances of the case it can be reasonably inferred that the quantity of narcotic actually discovered is a remnant of a larger, usable amount.

7. DRUGS AND NARCOTICS—CRIMINAL LAW—POSSESSION—USABLE AMOUNT—QUANTITATIVE TEST.

No error, in a trial for possession of a controlled substance, resulted from a failure to conduct a quantitative test of the narcotics found in a defendant's possession; the possession of several capsules, the analysis of one of which shows it to be a controlled substance, is enough to demonstrate clearly the possession of a usable quantity of the controlled substance.

8. CRIMINAL LAW—APPEAL AND ERROR—PROSECUTOR'S QUESTIONS—FAILURE TO OBJECT—MANIFEST INJUSTICE.

Failure to object to a prosecutor's questions precludes appellate review where there is no manifest injustice.

Appeal from Oakland, Robert L. Templin, J. Submitted Division 2 April 10, 1975, at Lansing. (Docket Nos. 21040, 21041.) Decided May 30, 1975.

James G. Kincade was convicted of carrying a concealed weapon and possession of a controlled substance. Defendant appeals. Affirmed in part, reversed in part.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Campbell, Lee, Kurzman & Leitman,* for defendant.

Before: V. J. BRENNAN, P. J. and D. E. HOLBROOK and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. After a jury trial in Oakland County Circuit Court, the defendant was convicted of carrying a concealed weapon, MCLA 750.227; MSA 28.424, and possession of a controlled substance, MCLA 335.318, 335.341(4)(b); MSA 18.1070(18), 1070(41)(4)(b).

On appeal, the defendant contends the trial court erred in three respects. First, he alleges that it was error to deny his motion for directed verdict on the concealed weapons charge because the element of concealment was not established. Second, he argues that a "usable amount" of the controlled substance was not established. Finally, the defendant claims the prosecution erroneously placed his character into evidence.

Prior to trial, both in the district and circuit courts, the defendant moved to quash the information on the grounds that "concealment" had not been established at his preliminary examination. Both motions were denied.

At trial Pontiac Police Officer Allan Booze testified that a large number of officers, during the early morning hours of April 13, 1973, participated in a raid on "an after hours" and "illegal-sale-of-liquor" joint in Pontiac. Officer Booze and his partner Officer Drohomer were instructed to go to a particular door of the building and to detain people from leaving the premises. Just as he

reached the door of the building, he met the defendant who was running out of the door. Officer Booze observed that he had a dark object in his hand, which was at his side. The defendant's hand was clenched around the object. As the defendant was 5 or 6 feet away from the officer, the defendant "straight-armed" the object in the officer's direction. The object glanced off the side of the officer's head. The officer then picked the object up from the ground and realized for the first time that it was a .38-caliber revolver.

Officer Booze made clear in his testimony that there was no indication that the defendant was pulling the gun from his clothing and that he believed that in throwing the gun the defendant was only trying to throw it away, not to strike the officer. To defense counsel's question as to whether the defendant was trying to conceal the weapon from the officer, the officer answered that he felt the defendant was just trying to get rid of it.

Officer Alan Drohomer testified that he saw that the defendant had something in his hand but that because the area around the doorway was dark (it was 4 a.m.), he also could not tell what the object was. There was no light outside the building. Other police officers in less advantageous positions to view the event testified, but none added materially to the testimony of Officers Booze and Drohomer.

In reviewing the above-stated facts to determine whether a directed verdict was improperly denied, we must, taking the evidence in a light most favorable to the prosecution, decide whether there are sufficient facts to support the finding of the element of "concealment". See *People v Watkins,* 36 Mich App 380; 193 NW2d 914 (1971), *aff'd* 388 Mich 717; 202 NW2d 780 (1972).

MCLA 750.227; MSA 28.424, declares it a felony for a person to "carry a pistol concealed on or about his person * * * ". The purpose of the statute is explained by Chief Judge Lesinski in *People v Johnnie W Jones,* 12 Mich App 293, 295–296; 162 NW2d 847 (1968), quoting from *People v Raso,* 9 Misc 2d 739; 170 NYS2d 245, 251 (1958):

" 'The purpose of *all* concealment statutes is clear. At the time they were enacted, the open carrying of weapons upon the person, was not prohibited. The purpose of the concealed weapons statutes was to prevent men in sudden quarrel or in the commission of crime from drawing concealed weapons and using them without prior notice to their victims that they were armed. The person assailed or attacked would behave one way if he knew his assailant was armed and perhaps another way if he could safely presume that he was unarmed.' "

Absolute invisibility of a weapon is not indispensable to concealment; the weapon need not be totally concealed. *People v Stirewalt,* 16 Mich App 343; 167 NW2d 779 (1969). See also *People v Jackson,* 43 Mich App 569; 204 NW2d 367 (1972). The test for concealment in this jurisdiction was stated by *People v Jones, supra.* A weapon is concealed,

"when it is not discernible by the ordinary observation of persons coming in contact with the person carrying it, casually observing him, as people do in the ordinary and usual associations of life". 12 Mich App 293, 296.

The prosecution takes the position that concealment has been found in a number of cases which are directly analogous to the present case. In *People v Clark,* 21 Mich App 712; 176 NW2d 427 (1970), a pistol was held to be concealed where it

was in the defendant's pocket and the officer could see it only after the pocket came open and the officer looked down into the pocket. Likewise, in *People v Iacopelli,* 30 Mich App 105; 186 NW2d 38 (1971), the defendant placed a gun in his coat after having it in plain sight. The Court upheld the carrying a concealed weapon conviction. A directed verdict on the same ground as in the present case was denied in *People v Charron,* 54 Mich App 26; 220 NW2d 216 (1974), where the police officer noticed a knife protruding from the rear pocket of a defendant's pants. Finally, evidence that defendant had placed a revolver in the belt or waistband of his trousers and that the weapon could not be readily seen was held to be sufficient to uphold the conviction in *People v Jackson,* 43 Mich App 569; 204 NW2d 367 (1972).

In all of these cases, a weapon has been found at least partially covered by the defendant's clothing. We do not hold, however, that a revolver cannot be concealed in a person's hand. Indeed, situations readily come to mind in which the element of concealment would be met by the secreting of a weapon by the use of a person's hands.

But the fact that part of a revolver is covered by its holder's hand does not by itself constitute concealment. If that were the case, everyone not authorized by statute to carry a firearm would be guilty of the felony of carrying a concealed weapon for simply holding onto it. Such a count could be added to every charge of armed robbery, felonious assault and several other offenses.

In striking down a conviction under this statute, MCLA 750.227; MSA 28.424, the Michigan Supreme Court in *People v Smith,* 393 Mich 432; 225 NW2d 165 (1975), construed the statutory phrase "dangerous weapon" as not including an M-1 rifle

under the rule of *ejusdem generis.* It is interesting to note that in that case, as in this one, the prosecutor could have charged the defendant under other, more appropriate statutes. The defendants in both cases perhaps should have been charged with MCLA 750.226; MSA 28.423, which prohibits the carrying of firearms or other dangerous weapons with unlawful intent.

Statutes must be construed according to their ordinary and natural meaning. The word "concealed" ordinarily connotes some kind of withdrawal from observation so as to hide or secrete an object.

Whether a concealment has been established by the evidence presented is *ordinarily* a question for the jury. *People v Jackson, supra.* But the question of whether there is sufficient evidence on an element of the offense is most definitely within the province of the courts. *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975).

A careful examination of the record convinces us that the evidence did not establish the element of concealment. It is true that the officers who confronted the defendant could not discern that he possessed a revolver. But concealment occurs when the pistol is not discernible by the ordinary observation of persons casually observing the person carrying it. *People v Jones, supra.* The circumstances surrounding the meeting of the police officers and the defendant in this case were certainly not conducive to a casual observation. There is no evidence to counter the conclusion that the officers' inability to identify the object was due to the limited visibility in the doorway area and the fact that the confrontation occurred suddenly and lasted but a few seconds. Considering the circumstances, it is quite understandable that the police

officers did not recognize the object as a weapon. But the lumination available and the instantaneous nature of the observation are not factors which can be used to bolster concealment.

Testing the sufficiency of the evidence under the charge, we conclude that the element of concealment was not established and that the conviction must be reversed.

The defendant also challenges his conviction for possession of a controlled substance on the ground that the prosecution failed to establish that he possessed a usable amount.

After Officer Booze retrieved the revolver thrown by the defendant, the defendant was arrested and searched. The search produced a small bottle containing several red and blue capsules. The crime laboratory conducted a qualitative analysis of one of the capsules, and the expert witness from the laboratory testified at trial that the capsule contained two barbituric acid derivatives, amobarbital and secobarbital, commonly known by the trade name of Tuinal. A quantitative analysis was not performed upon the capsule sample.

The trial court at first held that whether there was a sufficient quantity of controlled substance was a jury question, but later reversed itself and held that any quantity of Tuinal would be sufficient to constitute a controlled substance.

In *People v Harrington,* 33 Mich App 548, 550; 190 NW2d 343 (1971), Judge QUINN introduced the usable amount concept to this state:

"[T]he facts and circumstances in each case [should] be viewed to determine if it can be reasonably inferred that the quantity of narcotic actually discovered is but a remnant of a larger, usable amount. If that inference can be made, illegal possession is established."

See also *People v Eugene Harris,* 43 Mich App 531; 204 NW2d 549 (1972).

Defendant's contention that it was error not to have conducted a quantitative test has been rejected by this Court and we adhere to those decisions. *People v Busby,* 56 Mich App 389; 224 NW2d 322 (1974). *People v Stewart,* 52 Mich App 477; 217 NW2d 894 (1974). We reject the defendant's construction of MCLA 335.318(1)(b); MSA 18.1070(18)(1)(b), that the Legislature intended to require a quantitative analysis to determine if the substance had a potential for abuse. See *People v Busby, supra.*

The defendant's possession of several capsules, the analysis of one of which shows it to be a controlled substance, is enough to demonstrate clearly the possession of a usable quantity of a controlled substance. See *People v Busby, supra.* The present claim of error is governed by *People v Eugene Harris,* 43 Mich App 531, 541–542; 204 NW2d 549 (1972), which held:

"Since the present quantity of heroin was clearly a usable amount, the jury instruction [that 'any quantity of narcotics was sufficient to support a conviction'] did not constitute reversible error."

The defendant's third and final contention of error is that the prosecution erroneously put the defendant's character in evidence. It is unnecessary to set forth the details of the testimony given. We have examined that testimony with care and conclude that the defendant's argument is without merit. Most of the cross-examination of the defendant was not objected to and thus, absent manifest injustice which is not present here, is beyond appellate review. *People v Thomas,* 44 Mich App 649; 205 NW2d 604 (1973). Additionally, the sub-

jects which defendant contends reflected upon his character were, for the most part, put in issue first during the direct examination of the defendant. See *People v Minney,* 155 Mich 534, 540; 119 NW 918 (1909).

The recent decision by the Michigan Supreme Court, *People v Johnson,* 393 Mich 488; 227 NW2d 523 (1975), is inapposite to this case since there the prosecutor advised the jury that they should consider the defendant's poverty and unemployment in determining his guilt of the charge of carrying a concealed weapon. In this case, the prosecutor's questioning does not suggest this inference but merely followed through on a subject raised during direct examination.

The defendant's conviction of carrying a concealed weapon is reversed. The defendant's conviction of possession of a controlled substance is affirmed.